# Syllabus

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kimberly K. Muschong

## CANTY v MASON

Docket No. 167772. Argued on application for leave to appeal March 10, 2026. Decided July 27, 2026.

Joseph Canty brought a tort action in the Wayne Circuit Court against Michael C. Mason, seeking to recover allowable expenses for medical treatment under MCL 500.3135(3)(c) of the no-fault act, MCL 500.3101 *et seq.*, for injuries he sustained in a car crash allegedly caused by defendant. Although plaintiff carried no-fault insurance, he had waived personal protection insurance (PIP) coverage under MCL 500.3107d, which he was able to do pursuant to MCL 500.3107d(1) and (7)(b)(*ii*) because he otherwise had "qualified health coverage" under Parts A and B of the federal Medicare program. Therefore, rather than seeking PIP coverage for medical expenses through a no-fault insurer, he pursued a tort action against defendant.

Defendant moved for partial summary disposition under MCR 2.116(C)(10), seeking to limit plaintiff's recovery of allowable expenses. Defendant believed that multiple medical providers that treated plaintiff accepted Medicare, but none of them billed Medicare for any of plaintiff's treatment, nor did they charge Medicare rates. Defendant further alleged that plaintiff did not submit for reimbursement from Medicare, instead claiming the full amount billed as damages in his suit. Defendant sought summary disposition as to the charges provided by Medicare providers, arguing that plaintiff had a duty to mitigate his damages by using his Medicare coverage and that any recovery should be subject to the reimbursement limitations in MCL 500.3157.

The trial court, Kathleen M. McCarthy, J., denied summary disposition on these issues, holding that plaintiff did not have a common-law duty to mitigate his damages and that the reimbursement limitations in MCL 500.3157 did not apply to plaintiff's third-party negligence claim. Defendant sought interlocutory leave to appeal, which the Court of Appeals granted. In a split, published opinion, the Court of Appeals, MARKEY, P.J., and SWARTZLE, J. (MARIANI, J., concurring in part and dissenting in part), held that plaintiff had a duty to mitigate damages and that the MCL 500.3157 reimbursement limitations did apply to plaintiff's claim. ___ Mich App ___ (October 4, 2024) (Docket No. 365327). Plaintiff sought leave to appeal in the Supreme Court, and the Supreme Court ordered and heard oral argument on the application. ___ Mich ___; 25 NW3d 131 (2025).

In an opinion by Justice BERNSTEIN, joined by Chief Justice CAVANAGH and Justices WELCH, BOLDEN, THOMAS, and HOOD, the Supreme Court, in lieu of granting leave to appeal, *held*:

1. The common-law mitigation-of-damages doctrine applies to plaintiff's tort claim under MCL 500.3135(3)(c); accordingly, plaintiff had a duty to mitigate his damages by seeking payments from Medicare for the treatment he received from Medicare-participating providers. When a person is the victim of a tort, that person has a legal duty to avoid or minimize the damages. To mitigate damages, the person must make efforts that are reasonable under the circumstances to minimize the economic harm caused by the wrongdoer. A defendant may raise the failure to mitigate damages as an affirmative defense and bears the burden to prove that the plaintiff failed to make reasonable efforts. MCL 500.3135(3)(c) allows a person who elected not to maintain PIP coverage because they maintained no-fault insurance and a qualified health plan, in this case in the form of Medicare Parts A and B, to recover damages for allowable expenses, as defined in MCL 500.3107 to MCL 500.3110, including all future allowable expenses and work loss, in excess of any applicable limit under MCL 500.3107c or the daily, monthly, and three-year limitations contained in those sections, or without limit for allowable expenses. MCL 500.3107(1)(a) provides that allowable expenses consist of reasonable charges incurred for reasonably necessary products, services, and accommodations for an injured person's care, recovery, or rehabilitation. The phrase "without limit" in MCL 500.3135(3)(c) cannot be construed to mean that there are no limits on plaintiff's recovery of allowable expenses; medical charges must still be reasonable and necessary to comply with the definition of "allowable expenses" under MCL 500.3107(1)(a). Therefore, the Court of Appeals properly concluded that plaintiff was required to mitigate his damages by making reasonable efforts to minimize his economic harm; here, such reasonable efforts would involve seeking Medicare coverage for treatment he received from Medicare-participating providers. The Court of Appeals' judgment is affirmed on this issue.

2. The reimbursement limitations in MCL 500.3157 do not apply to plaintiff's tort claim brought under MCL 500.3135(3)(c). MCL 500.3135(3)(c) allows plaintiffs to file suit for allowable expenses as defined in MCL 500.3107 to MCL 500.3110. MCL 500.3107(1)(a) provides that, subject to the exceptions and limitations in this chapter, and subject to Chapter 31A, PIP benefits are payable for allowable expenses consisting of reasonable charges incurred for reasonably necessary products, services, and accommodations for an injured person's care, recovery, or rehabilitation. The Court of Appeals improperly concluded that the prefatory language "subject to the exceptions and limitations in this chapter" in MCL 500.3107(1) imports the entirety of the no-fault act, including the MCL 500.3157 reimbursement limitations, into the definition of "allowable expenses" available in a tort action under MCL 500.3135(3)(c). This interpretation renders superfluous portions of MCL 500.3135(3)(c). If the Court of Appeals majority were correct in noting that the prefatory language of MCL 500.3107(1) brings with it the entirety of the no-fault act, it would be unnecessary surplusage for MCL 500.3135(3)(c) to refer to provisions other than MCL 500.3107, as those would already have been imported by reference to MCL 500.3107 alone. Instead, the Legislature elected to specify a limited source for the definition of allowable expenses in MCL 500.3135(3)(c)—MCL 500.3107 to MCL 500.3110. This reading is also consistent with the context of MCL 500.3135(3)(c) as providing for tort damages specifically. The Court of Appeals' judgment is reversed on this issue.

Court of Appeals' judgment affirmed in part and reversed in part; case remanded to the trial court for further proceedings.

Justice WELCH, concurring, fully agreed with Part IV(A) of the majority opinion that plaintiff had a duty to mitigate damages by seeking payments from Medicare. She further agreed with the majority's statutory interpretation in Part IV(B) that the reimbursement limitations in MCL 500.3157 do not apply to tort claims brought under MCL 500.3135(3)(c), but she questioned the majority's reasoning that legislative intent supports the result. She wrote to highlight for the Legislature a possible inconsistency between the majority's conclusion and the overall purpose and design of the 2019 amendments of the no-fault act. In allowing for uncapped tort damages when an individual has opted out of PIP coverage, MCL 500.3135(3)(c) leads to an anomalous result: an individual with Medicare who has opted out of PIP coverage—thus paying significantly less for insurance coverage—may have allowable expenses reimbursed at a higher rate than an individual who has chosen more expensive PIP coverage with higher limits or unlimited coverage. Further, an at-fault driver's ultimate liability in tort rests upon the type of PIP coverage held by the injured party—something over which the at-fault driver has no control. If the injured party has PIP coverage, the at-fault party is not responsible for allowable expenses; however, if the injured party has opted out of PIP coverage, the at-fault driver could be liable for astronomically high damages claims well beyond the residual liability limit on their own policy.

Justice ZAHRA, concurring in part and dissenting in part, agreed with the majority that in tort actions under MCL 500.3135(3)(c), plaintiffs who are covered by Medicare must mitigate their damages by seeking payments from Medicare. He further agreed that the reimbursement limitations in MCL 500.3157 do not apply to tort actions under MCL 500.3135(3)(c). His disagreement stems from the majority's implied holding that there are no applicable fee schedules for this action; because plaintiff had Medicare, the Medicare fee schedules are plainly applicable. A person with Medicare who opts out of no-fault insurance is entitled to be reimbursed according to Medicare's fee schedules, which provide the amount allowed to be set off from the potential recovery in the tort action. The Court's holding in this matter unwisely suggests that Medicare providers may charge higher rates than those permitted by Medicare, which is unlawful. Plaintiff elected to opt out of no-fault insurance because he had Medicare; accordingly, any claim for care arising out of an automobile accident can be made only through the federal Medicare program. Justice ZAHRA would hold that plaintiff is entitled to be reimbursed for allowable expenses under the Medicare fee schedules.

# OPINION

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

FILED July 27, 2026

STATE OF MICHIGAN

SUPREME COURT

JOSEPH CANTY,

      Plaintiff-Appellant,

v

No. 167772

MICHAEL CHESTER MASON,

      Defendant-Appellee.

BEFORE THE ENTIRE BENCH

BERNSTEIN, J.

In this case, we interpret certain 2019 amendments, enacted through 2019 PA 21 and 2019 PA 22, to the no-fault act, MCL 500.3101 *et seq.* Specifically, we examine the bounds of allowable medical expenses available in a tort action under MCL 500.3135(3)(c) when the injured party has coverage through the Medicare program. We first conclude that the no-fault act did not abrogate the common-law duty to mitigate damages; thus, in tort actions under MCL 500.3135(3)(c), plaintiffs who are covered by Medicare must mitigate

their damages by seeking payments from Medicare. We also conclude that the limits on reimbursement for medical expenses set forth in MCL 500.3157, which are calculated based on Medicare fee schedules, do not apply to tort actions under MCL 500.3135(3)(c). Accordingly, we affirm the judgment of the Court of Appeals in part, reverse in part, and remand this case to the trial court for further proceedings.

## I. BACKGROUND

Prior to the 2019 amendments to the no-fault act, an individual injured in a car accident was entitled to unlimited personal protection insurance (PIP) benefits from their own no-fault insurance policy. Because drivers were required to maintain no-fault insurance, including PIP coverage, tort suits brought by an injured person against another driver were only permitted for a very limited class of catastrophic accidents.

In 2019, however, the Legislature reformed the scheme in an effort to lower costs for consumers. First, the Legislature allowed individuals purchasing no-fault insurance to select lower levels of PIP coverage, in some cases dependent on health insurance coverage. MCL 500.3107c. One class of people—individuals with coverage under Parts A and B of Medicare—could opt out of PIP coverage completely. Specifically, MCL 500.3107d(1) provides:

> For an insurance policy that provides the security required under section 3101(1) and is issued or renewed after July 1, 2020, the applicant or named insured may, in a way required under section 3107e and on a form approved by the director, elect to not maintain coverage for personal protection insurance benefits payable under section 3107(1)(a) if the applicant or named insured is a qualified person, and if the applicant's or named insured's spouse and any relative of either that resides in the same household have qualified health coverage or have coverage for benefits payable under section 3107(1)(a) from an insurer that provides the security required by section 3101(1).

2

A "qualified person" is "a person who has qualified health coverage under subdivision (b)(*ii*)," MCL 500.3107d(7)(c), and a person who has qualified health coverage under Subdivision (b)(*ii*) is a person who has "[c]overage under parts A and B of the federal Medicare program established under subchapter XVIII of the social security act, 42 USC 1395 to 1395*lll*," MCL 500.3107d(7)(b)(*ii*).

Anticipating a gap between limited or no PIP benefits and the high cost of care as people started to opt out of PIP coverage, the Legislature expanded the fault-based portion of the statutory scheme. MCL 500.3135(3)(c) provides:

> (3) Notwithstanding any other provision of law, tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle with respect to which the security required by section 3101(1) was in effect is abolished except as to:
>
> * * *
>
> (c) Damages for allowable expenses, work loss, and survivor's loss as defined in sections 3107 to 3110, including all future allowable expenses and work loss, in excess of any applicable limit under section 3107c or the daily, monthly, and 3-year limitations contained in those sections, or without limit for allowable expenses if an election to not maintain that coverage was made under section 3107d or if an exclusion under section 3109a(2) applies. The party liable for damages is entitled to an exemption reducing his or her liability by the amount of taxes that would have been payable on account of income the injured person would have received if he or she had not been injured.[1]

---

[1] The equivalent provision prior to the 2019 amendments, MCL 500.3135(3)(c), as amended by 2012 PA 158, limited this exemption to

> [d]amages for allowable expenses, work loss, and survivor's loss as defined in sections 3107 to 3110 in excess of the daily, monthly, and 3-year limitations contained in those sections. The party liable for damages is entitled to an exemption reducing his or her liability by the amount of taxes

3

In other words, when an individual who has opted for lower or no PIP coverage is injured in an accident, they can file a tort suit and try to recover the costs their no-fault insurance will not cover.

Another major aspect of the 2019 no-fault reforms was the introduction of reimbursement limitations that cap what no-fault insurers must reimburse medical providers. MCL 500.3157 sets upper limits on the amount a "physician, hospital, clinic, or other person that renders treatment or rehabilitative occupational training to an injured person for an accidental bodily injury covered by personal protection insurance" may recover. The upper limits are tied to Medicare reimbursement rates.[2]

## II. FACTS AND PROCEEDINGS

Plaintiff, Joseph Canty, asserts that he was injured in a car accident caused by defendant, Michael Mason, in February 2021. Although plaintiff carried no-fault insurance, he had waived personal protection insurance (PIP) coverage under MCL 500.3107d, which he was able to do because he otherwise had "qualified health coverage" under Parts A and B of the federal Medicare program. MCL 500.3107d(1) and (7)(b)(*ii*). Therefore, rather than seeking PIP coverage for medical expenses through a no-fault insurer, he pursued a tort action against defendant to recover "allowable expenses" for medical treatment under MCL 500.3135(3)(c).

_____

that would have been payable on account of income the injured person would have received if he or she had not been injured.

[2] For example, treatment or training rendered after July 1, 2023, is capped at "190% of the amount payable to the person for the treatment or training under Medicare." MCL 500.3157(2)(c).

Defendant moved for partial summary disposition under MCR 2.116(C)(10), seeking to limit plaintiff's recovery of allowable expenses on multiple theories. Defendant believed that multiple medical providers that treated plaintiff accepted Medicare, but none of them billed Medicare for any of plaintiff's treatment, nor did they charge Medicare rates. Nor did plaintiff submit for reimbursement from Medicare, instead claiming the full amount billed as damages in his suit. Defendant sought summary disposition as to the charges provided by Medicare providers, arguing that plaintiff had a duty to mitigate his damages by using his Medicare coverage and that any recovery should be subject to the reimbursement limitations added to MCL 500.3157 as part of the 2019 no-fault amendments. The trial court denied summary disposition on these issues, holding that plaintiff did not have a common-law duty to mitigate his damages and that the reimbursement limitations set forth in MCL 500.3157 did not apply to plaintiff's third-party negligence claim.

The Court of Appeals granted interlocutory review and issued a split, published opinion holding that plaintiff had a duty to mitigate damages and that the MCL 500.3157 reimbursement limitations did apply to plaintiff's claim. *Canty v Mason*, ___ Mich App ___, ___; ___ NW3d ___ (October 4, 2024) (Docket No. 365327); slip op at 8. The Court remanded the case with instructions that any damages must be reduced by the "medical expenses that would have been covered by Medicare . . . ." *Id*. at ___; slip op at 8. Judge MARIANI concurred in part and dissented in part, agreeing with the majority regarding the duty to mitigate damages but opining that the MCL 500.3157 reimbursement limitations should not apply to limit plaintiff's damages. *Id*. at ___ (MARIANI, J., concurring in part and dissenting in part); slip op at 1. Plaintiff then sought leave to appeal in this Court, and

5

we ordered oral argument on the application. *Canty v Mason*, ___ Mich ___; 25 NW3d 131 (2025).

## III. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition under MCR 2.116(C)(10) is subject to review de novo. *Buhl v Oak Park*, 507 Mich 236, 242; 968 NW2d 348 (2021). Summary disposition under MCR 2.116(C)(10) "is appropriate when no genuine issues of material fact exist." *Id*.

Questions of statutory interpretation are also reviewed de novo. *Wyandotte Electric Supply Co v Electrical Technology Sys, Inc*, 499 Mich 127, 137; 881 NW2d 95 (2016). In interpreting a statute, our principal rule of construction is to determine and give effect to the Legislature's intent, and the most reliable indicator of that intent is the plain language of the statute. *Id*. In considering statutory language, "we are bound to give meaning to each and every word in the statute so as not to render any portion nugatory or surplusage." *In re Forfeiture of 2006 Saturn Ion*, 514 Mich 399, 408; 22 NW3d 446 (2024).

## IV. ANALYSIS

### A. MITIGATION OF DAMAGES

Mitigation of damages is a common-law doctrine that aims to minimize the economic harm arising from wrongdoing. *Morris v Clawson Tank Co*, 459 Mich 256, 263; 587 NW2d 253 (1998). When a person is the victim of a tort, that person has a legal duty to avoid or minimize the damages. *Id*. Specifically, "in order to mitigate damages, the plaintiff must make efforts that are reasonable under the circumstances to minimize the economic harm caused by the wrongdoer." *Id*. at 265. A defendant may raise the failure

6

to mitigate damages as an affirmative defense and bears the burden to prove that the plaintiff failed to make reasonable efforts. *Rasheed v Chrysler Corp*, 445 Mich 109, 124; 517 NW2d 19 (1994). The question of whether such efforts were reasonable is to be determined by the trier of fact. *Morris*, 459 Mich at 266.

Here, the question is whether this doctrine applies to plaintiff's tort claim under MCL 500.3135(3)(c), and if so, whether the doctrine required plaintiff to seek payment of his medical bills from Medicare. Key to these questions is the meaning of "without limit" as used in the pertinent part of MCL 500.3135(3)(c): "Damages for allowable expenses, work loss, and survivor's loss as defined in sections 3107 to 3110, including all future allowable expenses and work loss, in excess of any applicable limit under section 3107c or the daily, monthly, and 3-year limitations contained in those sections, or without limit for allowable expenses . . . ." Plaintiff argues that when the phrase "without limit" is given full effect, there can be no duty to mitigate. Defendant argues that "without limit" cannot mean that there are no limits on plaintiff's recovery of allowable expenses because medical charges must still be reasonable and necessary to comply with the definition of "allowable expenses" under MCL 500.3107(1)(a).

We agree with defendant's interpretation and conclude that the answer to both of these questions is yes. MCL 500.3135(3)(c) allows a person who elected not to maintain PIP coverage because they maintained no-fault insurance and a qualified health plan, in this case in the form of Medicare Parts A and B, to recover "[d]amages for allowable expenses . . . as defined in sections 3107 to 3110 . . . ." MCL 500.3107, which is expressly incorporated by MCL 500.3135(3)(c), explains, in pertinent part, that "[a]llowable expenses consist[] of reasonable charges incurred for reasonably necessary products,

7

services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a). Thus, "[d]amages for allowable expenses" must "consist[] of reasonable charges incurred" for reasonable services. "Without limit" does not broadly eliminate the incorporated references to MCL 500.3107(1)(a), which requires allowable expenses to be reasonable and necessary. Rather, we agree with the Court of Appeals that "the 'without limit' phrase, when read in context, simply means that the recovery of allowable expenses does not solely encompass amounts in excess of the statutory limitations . . . ." *Canty*, ___ Mich App at ___; slip op at 5.

Defendant argues that the best proxy for "reasonable charges" requires plaintiff to mitigate damages by seeking Medicare payments for Medicare-eligible products, services, and accommodations. Although the no-fault act does not explicitly mention the mitigation-of-damages doctrine, we understand the Legislature to be aware of the common law when it acts. *Janini v London Townhouses Condo Ass'n*, 514 Mich 86, 95; 22 NW3d 24 (2024). Moreover, statutes are to be construed in accordance with the common law unless the Legislature speaks in no uncertain terms as to its intent to abrogate. *Bazzi v Sentinel Ins Co*, 502 Mich 390, 400; 919 NW2d 20 (2018). In keeping with these principles, we have previously concluded that the mitigation-of-damages doctrine applies to a claim for work-loss benefits under the no-fault act. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 651-652; 513 NW2d 799 (1994). By the same token, the mitigation-of-damages doctrine applies to plaintiff's tort claim under MCL 500.3135(3)(c).

Therefore, the Court of Appeals properly concluded that plaintiff was required to mitigate his damages by making reasonable efforts to minimize his economic harm. Here, such reasonable efforts would involve seeking Medicare coverage for the treatment he

8

received from Medicare-participating providers. Such a requirement is no more onerous than the mitigation that has been ordered in other contexts. See, e.g., *id*. at 654-655 (finding that, in the wrongful-discharge context, mitigation of damages generally involves seeking or accepting substantially similar employment); *Braverman v Granger*, 303 Mich App 587, 606-607; 844 NW2d 485 (2014) (finding that, in the medical malpractice context, a patient's failure to accept a medical procedure with a high probability of saving the patient's life was a failure to mitigate damages because it was objectively unreasonable); *Jefferson Dev Co v Heritage Cleaners*, 109 Mich App 606, 611-612; 311 NW2d 426 (1981) (finding that, after a tenant wrongfully abandons rented premises, a landlord has a duty to mitigate damages by making efforts to relet the premises); *Lorenz Supply Co v American Std, Inc*, 100 Mich App 600, 610-611; 300 NW2d 335 (1980) (finding that, in a breach-of-contract action regarding a distribution agreement, a wronged distributor must make reasonable efforts to find cover for goods not received).

We note the complicating interaction of Medicare and automobile insurance. Medicare is explicitly granted secondary payor status under the Medicare Secondary Payor Act, 42 USC 1395y(b)(2), and its payments are conditional, with repayment required whenever a primary plan is deemed responsible for payment of medical expenses, 42 USC 1395y(b)(2)(B). In other words, even when Medicare makes the initial payment, the tortfeasor is ultimately responsible for the damages. The existence of these requirements does not obviate plaintiff's duty to seek mitigation.

We thus affirm the judgment of the Court of Appeals on this issue. As that Court stated, on remand to the trial court, plaintiff remains free to argue the reasonableness of his decision to seek some medical treatment or care from non-Medicare providers.

9

## B. APPLICABILITY OF MCL 500.3157

As part of the sweeping amendments to the no-fault act in 2019, MCL 500.3157 was overhauled to impose limitations on the availability of payment or reimbursement for treatment "to an injured person for an accidental bodily injury covered by personal protection insurance." MCL 500.3157(1). However, plaintiff's claim is not one for PIP benefits but rather a tort action under MCL 500.3135(3)(c).

We must consider whether the limitations of MCL 500.3157 apply to a tort action. The Court of Appeals majority concluded that MCL 500.3157 does apply to plaintiff's action. Recall that MCL 500.3135(3)(c) allows plaintiffs to file suit for "allowable expenses, work loss, and survivor's loss as defined in sections 3107 to 3110 . . . ." The Court of Appeals majority looked to the language of MCL 500.3107, which provides, in pertinent part:

> (1) Subject to the exceptions and limitations in this chapter, and subject to chapter 31A, personal protection insurance benefits are payable for the following:

> (a) Allowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation.

The Court of Appeals concluded that the prefatory language in this provision, "[s]ubject to the exceptions and limitations in this chapter," imports the entirety of the no-fault act, including the reimbursement limitations based on Medicare fee schedules in MCL 500.3157, into the definition of "allowable expenses" available in a tort action under MCL 500.3135(3)(c).

We disagree with this reading. It is well established that we must interpret statutory language so as to give meaning to each word and to not render any portion of a statute

10

surplusage or nugatory. *In re Forfeiture*, 514 Mich at 408. The interpretation adopted by the Court of Appeals majority may have some facial appeal, but it would render superfluous portions of MCL 500.3135(3)(c). In particular, MCL 500.3135(3)(c) provides for the availability of specified categories of damages "as defined in sections 3107 to 3110." If a mere reference to MCL 500.3107 were sufficient to import the entirety of the no-fault act into MCL 500.3135(3)(c), then there would be no need for MCL 500.3135(3)(c) to also reference any other provisions, as it currently does. Said differently, if the Court of Appeals majority were correct in noting that the prefatory language of MCL 500.3107(1) brings with it the entirety of the no-fault act, it would be unnecessary surplusage for MCL 500.3135(3)(c) to refer to provisions other than MCL 500.3107, as those would already have been imported by reference to MCL 500.3107 alone. Instead, the Legislature elected to specify a limited source for the definition of allowable expenses in MCL 500.3135(3)(c)—"sections 3107 to 3110." Accordingly, we hold that a plain-language reading of MCL 500.3135(3)(c) does not contemplate adoption of the reimbursement limitations set forth in MCL 500.3157.

As aptly explained in Judge MARIANI's partial dissent, our reading is also consistent with the context of MCL 500.3135(3)(c) as providing for tort damages specifically. The prefatory language of MCL 500.3107(1) relied on by the Court of Appeals majority goes on to provide that "personal protection insurance benefits are payable for the following," indicating that the "exceptions and limitations in this chapter" are intended to define the scope of PIP benefits, not a claim for tort damages under MCL 500.3135(3)(c). Similarly, MCL 500.3157(1) itself specifies that the provision applies to treatment "for an accidental bodily injury covered by personal protection insurance." The plain language of these

11

provisions of the no-fault act highlights that the Legislature did not intend for the reimbursement limitations in MCL 500.3157 to apply to a claim for tort damages brought under MCL 500.3135(3)(c).[3]

We reverse the judgment of the Court of Appeals on this issue.

## V. CONCLUSION

For the foregoing reasons, we affirm the judgment of the Court of Appeals as to the applicability of the mitigation-of-damages doctrine, reverse as to the applicability of the reimbursement limitations in MCL 500.3157 to a tort claim brought under MCL 500.3135(3)(c), and remand this case to the trial court for further proceedings not inconsistent with this opinion.

Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

---

[3] In his partial dissent, Justice ZAHRA agrees with our conclusion that the reimbursement limitations in MCL 500.3157 do not apply to tort actions but argues that "the Medicare fee schedules are plainly applicable." We disagree. Justice ZAHRA's conclusion is premised on a misunderstanding of the relationship between Medicare and the no-fault act. The Medicare fee schedules, which are promulgated by the federal government and used to determine reimbursement rates for services rendered by Medicare providers, do not apply in any action brought under Michigan's no-fault act. MCL 500.3157 employs the Medicare fee schedules as a metric to calculate maximum reimbursement rates in PIP benefit actions, but those rates are considerably higher than the maximum fees allowed under the Medicare fee schedules. While the Medicare fee schedules are relevant in a tort action brought under MCL 500.3135(3)(c) where, as here, the plaintiff has Medicare coverage, multiple other factors may still be relevant to the question of damages.

STATE OF MICHIGAN

SUPREME COURT

JOSEPH CANTY,

      Plaintiff-Appellant,

v                                          No. 167772

MICHAEL CHESTER MASON,

      Defendant-Appellee.

_____

WELCH, J. (*concurring*).

I agree fully with the Court's decision in Part IV(A) of the majority opinion. I agree, also, with the Court's statutory interpretation in Part IV(B), except its reasoning stating that the legislative intent supports the result. As the majority opinion explains, as currently written, MCL 500.3135(3)(c) does not incorporate the reimbursement limitations set forth in MCL 500.3157. I write separately to highlight for the Legislature a possible inconsistency between this conclusion and the overall purpose and design of the 2019 no-fault reforms.

In short, MCL 500.3135(3)(c) explicitly lists the limitations on tort damages—and that list simply does not include the reimbursement limitations in MCL 500.3157. However, in allowing for uncapped tort damages when an individual has opted out of personal protection insurance (PIP) coverage, MCL 500.3135(3)(c) leads to an anomalous result: an individual with Medicare who has opted out of PIP coverage—thus paying significantly less for insurance coverage—may have allowable expenses reimbursed at a higher rate than an individual who has chosen more expensive PIP coverage with higher limits or unlimited coverage. I question if this result is really what the Legislature intended.

As Justice BERNSTEIN explains in the majority opinion, MCL 500.3135(3)(c) allows individuals who have opted out of PIP coverage under MCL 500.3107d(1) to file an action sounding in tort for "allowable expenses, work loss, and survivor's loss *as defined in sections 3107 to 3110 . . . .*" (Emphasis added.) In other words, MCL 500.3135(3)(c) clearly states that MCL 500.3107 to MCL 500.3110 provide the definitions of recoverable damages. Notably, MCL 500.3135(3)(c) does *not* reference MCL 500.3157. The Court of Appeals held that the prefatory language of MCL 500.3107(1)—"[s]ubject to the exceptions and limitations in this chapter"—incorporates *all* of Chapter 31, the no-fault act. *Canty v Mason*, ___ Mich App ___, ___; ___ NW3d ___ (October 4, 2024) (Docket No. 365327); slip op at 5-6.

I agree with the majority that this interpretation does too much work. To daisy-chain the entirety of the no-fault act in this manner would render nugatory the specific designation of a narrow range of statutory provisions in MCL 500.3135(3)(c). See *Jostock v Mayfield Twp*, 513 Mich 360, 372; 15 NW3d 552 (2024) ("When possible, we strive to avoid constructions that would render any part of the Legislature's work nugatory.") (quotation marks, citation, and brackets omitted). Therefore, I agree that as currently written, the reimbursement limitations in MCL 500.3157 apply only in PIP actions and do not limit recoverable damages in tort. If the Legislature had intended to apply the fee caps in MCL 500.3157 to tort damages, it could have clearly said so by referencing that specific statutory section in the list of limitations set forth in MCL 500.3135(3)(c).

That said, despite the clear language in MCL 500.3135(3)(c), not applying the reimbursement limitations to tort damages appears inconsistent with the purpose of the 2019 no-fault reforms—to reduce premiums and control costs. Prior to 2019, the no-fault

2

act required *all* drivers to carry a policy with PIP coverage for payment of "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a), as amended by 2012 PA 542. The guaranteed, prompt reimbursement of expenses resulting from personal injuries replaced the remedy at common law: tort damages. See *Andary v USAA Cas Ins Co*, 512 Mich 207, 216; 1 NW3d 186 (2023), quoting *Shavers v Attorney General*, 402 Mich 554, 579; 267 NW2d 72 (1978). Then, to reduce premiums, the 2019 reforms sought to shift some of the costs back to tort remedies. See *Andary*, 512 Mich at 216.

As relevant here, the 2019 reforms give Medicare beneficiaries the choice of completely opting out of PIP coverage. MCL 500.3107d(1) and (7)(b)(*ii*). In return for less generous coverage and no guaranteed reimbursement in the event of an accident, these individuals pay significantly lower premiums. See MCL 500.2111f(3) (requiring that if a person has opted out of PIP coverage, "the premium rates . . . must result in no premium charge for coverage for personal protection insurance benefits"). The fact that individuals who have opted out of PIP coverage in return for lower premiums are not subject to the limits in MCL 500.3157 appears to turn the premium incentives on their head: a driver who has benefited from lower premiums can sue and potentially recover *more* in damages than a driver who paid for a higher level of PIP coverage.[1]

---

[1] I agree with Justice ZAHRA that the common-law duty to mitigate damages by seeking Medicare coverage should, in most cases, effectively limit tort claim damages for Medicare-covered services rendered to the injured driver. But "allowable expenses" is a broad category that includes services not compensable under Medicare. See *Andary*, 512 Mich at 223-224 (concerning attendant care and custodial services not covered by Medicare but reimbursable as allowable expenses). Under the 2019 reforms, MCL

3

Further, an at-fault driver's ultimate liability in tort rests upon the type of PIP coverage held by the injured party—something over which the at-fault driver of course has no control. If the injured party has PIP coverage, the at-fault party is not responsible for allowable expenses. However, if the injured party has opted out of PIP coverage, the at-fault driver could be liable for astronomically high damages claims well beyond the residual liability limit on their own policy. And of course, this reality will likely have the long-term effect of driving up residual liability premiums.

Judge MARIANI contends that it is not "interpretively odd or concerning" for PIP benefits to be capped and tort damages to be uncapped, "given the fundamental difference in character between tort damages and insurance benefits . . . ." *Canty*, ___ Mich App at ___ (MARIANI, J., concurring in part and dissenting in part); slip op at 3 n 2. Though I agree with Judge MARIANI that PIP benefits and tort damages are different, the Legislature may want to revisit MCL 500.3135(3)(c) to examine if it really intended to treat the reimbursement rates for both differently in light of the purpose of the 2019 reforms.

Elizabeth M. Welch

---

500.3157(7) and (10) limit reimbursement for these non-Medicare-covered services when provided as PIP benefits. As outlined by the majority, MCL 500.3157 does not limit what a plaintiff can recoup in tort. As a result, an at-fault driver could be liable to an injured person for the full cost of lifetime care for non-Medicare-covered services. Although the cost of these services must, of course, be reasonable, these damages would be significant.

4

STATE OF MICHIGAN

SUPREME COURT

JOSEPH CANTY,

      Plaintiff-Appellant,

v

MICHAEL CHESTER MASON,

      Defendant-Appellee.

No. 167772

_____

ZAHRA, J. (*concurring in part and dissenting in part*).

I agree with the conclusions expressed in the majority opinion that "in tort actions under MCL 500.3135(3)(c), plaintiffs who are covered by Medicare must mitigate their damages by seeking payments from Medicare"[1] and that the fee schedules set forth in MCL 500.3157 do not apply to such actions. My disagreement with the majority opinion stems from its implied holding that there are no applicable fee schedules for this action.

In this case, plaintiff decided to opt out of no-fault insurance under MCL 500.3107d(1) of the no-fault act, MCL 500.3101 *et seq*., because he had "qualified health coverage," which, in this case, is Medicare. Accordingly, I conclude that the Medicare fee

---

[1] The majority opinion addresses mitigation of damages in terms of common law, but I would note that there is a statutory basis as well. MCL 500.3135(3)(c) incorporates MCL 500.3107 to MCL 500.3110 to allow damages for allowable expenses. MCL 500.3109(1) provides that "[b]enefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from . . . benefits otherwise payable for the injury under this chapter." Medicare healthcare benefits constitute benefits provided under the laws of the federal government, 42 USC 1395 *et seq*. Plaintiff has Medicare coverage and therefore is entitled to benefits required to be provided by Medicare. And to that extent, defendant is entitled to a setoff under MCL 500.3109(1).

schedules are plainly applicable. Indeed, the majority acknowledges that plaintiff is required to mitigate his damages with "reasonable efforts" that would "involve seeking Medicare coverage for the treatment he received from Medicare-participating providers." The majority also acknowledges that "Medicare fee schedules are relevant in a tort action brought under MCL 500.3135(3)(c) . . . ." Yet the majority opinion takes aim at my position, claiming that I have a "misunderstanding of the relationship between Medicare and the no-fault act." I can only restate with additional surety that plaintiff chose to decline personal protection insurance (PIP) benefits in lieu of Medicare and therefore is not entitled to a "metric to calculate maximum reimbursement rates in PIP benefit actions . . . ." Medicare providers cannot charge more (even if based on a "metric to calculate maximum reimbursement rates in PIP benefit actions") for Medicare services than the rates established under "the federal Medicare program established under subchapter XVIII of the social security act, 42 USC 1395 to 1395*lll*."[2] Providers who receive a Medicare payment, including a conditional payment, cannot pursue the patient for the difference between the amount Medicare paid and the amount the provider billed for the service.[3] This is true even when the plaintiff recovers in a tort action.[4] Further, Medicare's payment extinguishes the debt to the provider.[5] Thus, when a plaintiff makes reasonable efforts to mitigate damages by seeking Medicare coverage for the treatment received from Medicare

[2] MCL 500.3107d(7)(b)(*ii*).

[3] 42 USC 1395cc(a)(1)(A); 42 USC 1396a(n).

[4] See *Rybicki v Hartley*, 792 F2d 260, 261 (CA 1, 1986), citing 42 USC 1395cc(a)(1)(A) and 42 CFR 489.21(a).

[5] *Rybicki*, 792 F2d at 261; 42 USC 1395cc(a)(1)(A); 42 CFR 489.21(a).

providers and Medicare reimburses the providers under the Medicare fee schedules, that reimbursement extinguishes the plaintiff's liability to the provider.[6]

A person with Medicare who opts out of no-fault insurance is entitled to be reimbursed according to Medicare's fee schedules, which provide the amount allowed to be set off from the potential recovery in the tort action. The Court's holding in this matter unwisely suggests that Medicare providers may charge higher rates than those permitted by Medicare, which is unlawful. By holding that there are no applicable fee schedules for this action, the majority opinion is inconsistent with, and flies in the face of, the Legislature's 2019 no-fault reforms.

Pursuant to MCL 500.3107d(1), as enacted by 2019 PA 21 and 2019 PA 22, a person may "elect to not maintain coverage for personal protection insurance benefits payable under section 3107(1)(a) if the applicant or named insured is a *qualified person*, and if the applicant's or named insured's spouse and any relative of either that resides in the same household have *qualified health coverage* . . . ." (Emphasis added.) " 'Qualified person' means a person who has qualified health coverage under subdivision (b)(*ii*),"[7] which, in this case, means "[c]overage under parts A and B of the federal Medicare program established under subchapter XVIII of the social security act, 42 USC 1395 to 1395*lll*."[8]

---

[6] Defendant did not cross-appeal the Court of Appeals' decision regarding plaintiff's decision to seek some medical treatment or care from non-Medicare providers. While I would not reach that issue in this case, I suspect plaintiff's failure to seek some medical treatment or care from non-Medicare providers would contravene plaintiff's duty to mitigate damages.

[7] MCL 500.3107d(7)(c).

[8] MCL 500.3107d(7)(b)(*ii*).

Accordingly, because plaintiff elected to opt out of no-fault insurance, any claim for care arising out of an automobile accident can be made only through the federal Medicare program. Medicare has its own fee schedules, and Michigan's no-fault insurance fee schedules are set as derivatives based on Medicare's fee schedules. For instance, "[f]or treatment or training rendered after July 1, 2021 and before July 2, 2022, a no-fault provider may seek reimbursement" for no more than "*200% of the amount payable to the person for the treatment or training under Medicare.*"[9]

Plaintiff argues that this structure is entirely upended when a tort action is filed under MCL 500.3135(3)(c), which provides:

> (3) Notwithstanding any other provision of law, *tort liability* arising from the ownership, maintenance, or use within this state of a motor vehicle with respect to which the security required by section 3101(1) was in effect *is abolished except as to*:
>
> * * *
>
> (c) Damages for allowable expenses . . . as defined in sections 3107 to 3110, including all future allowable expenses . . . , in excess of any applicable limit under section 3107c or the daily, monthly, and 3-year limitations contained in those sections, or *without limit* for allowable expenses if an election to not maintain that coverage was made under section 3107d or if an exclusion under section 3109a(2) applies. [Emphasis added.]

This case turns on present and future "allowable expenses." Allowable expenses are defined in MCL 500.3107(1)(a), which provides, in pertinent part:

> Allowable expenses consist[] of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation.

---

[9] MCL 500.3157(2)(a) (emphasis added).

4

Allowable expenses include medical treatment and rehabilitation.[10] Plaintiff argues that the "without limit" language of MCL 500.3135(3)(c) should be construed to mean that there are no parameters whatsoever on the amount of recovery. The Court of Appeals majority in this case rejected this argument, stating:

> [T]he "without limit" phrase, when read in context, simply means that the recovery of allowable expenses does not solely encompass amounts in excess of the statutory limitations, as is the case with respect to a party pursuing a tort action after no more PIP benefits are available under a no-fault policy because the statutory limitations on coverage were met or exhausted. In other words, a person in Canty's shoes who elected not to have PIP coverage through an automobile insurance policy can recover *dollar one* in allowable expenses from the tortfeasor. [*Canty v Mason*, ___ Mich App ___, ___; ___ NW3d ___ (October 4, 2024) (Docket No. 365327); slip op at 5.]

While I generally agree with the panel majority's conclusion, I believe that its reasoning could be more succinctly stated: the phrase "without limit" functions to remove any limit on the number of claims for allowable expenses.

Defendant argues that the section containing the subsection defining "allowable expenses" is significant. That section, MCL 500.3107(1), provides that "[s]ubject to the exceptions and limitations in this chapter, and subject to chapter 31A, personal protection insurance benefits are payable for the following[.]" In arguing that the no-fault fee schedules are applicable, defendant maintains that the phrase "[s]ubject to the exceptions and limitations in this chapter" naturally includes the limitations imposed by the fee schedules found in MCL 500.3157. I disagree. MCL 500.3107(1) more likely refers to "*personal protection insurance benefits . . .* payable," rather than defining the "allowable

---

[10] See *Johnson v Recca*, 492 Mich 169, 175; 821 NW2d 520 (2012); *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 49; 457 NW2d 637 (1990).

expenses" for purposes of a tort action under MCL 500.3135(3)(c). (Emphasis added.) Plaintiff does not have no-fault insurance, so there is no reason to impose those limitations.

MCL 500.3135(3)(c) reasonably suggests that only certain provisions in MCL 500.3107 to MCL 500.3110 are relevant to "define" allowable expenses. The limitations imposed by MCL 500.3107(1) do not "define" allowable expenses; that definition is expressly found in MCL 500.3107(1)(a). Further, it makes little sense for the Legislature to have directed that certain provisions define allowable expenses only to make that definition "[s]ubject to the exceptions and limitations in this chapter, and subject to chapter 31A." Indeed, logic suggests that provisions outside of MCL 500.3107 to MCL 500.3110 do not "define" allowable damages.

Simply because MCL 500.3157 is not applicable to this action does not mean that no fee schedules are applicable. Plaintiff has Medicare, which indisputably has its own rates, and there is no reason given by the majority opinion to explain why those rates should not apply to "allowable expenses." Indeed, there is no indication that any of plaintiff's claims for "allowable expenses" would not have been available under Medicare. Accordingly, I would hold that plaintiff has a duty to mitigate damages in a tort action under MCL 500.3135(3)(c) by making reasonable efforts to seek Medicare coverage for the treatment he received from Medicare providers. Further, I would hold that plaintiff is entitled to reimbursement for "allowable expenses" under the Medicare schedules.

Brian K. Zahra

6